# IN THE COURT OF APPEALS OF IOWA

No. 20-1559
Filed April 14, 2021

**IN THE INTEREST OF I.S. and G.S.,**
**Minor Children,**

**S.O., Mother,**
　　　Petitioner-Appellee,

**A.S., Father,**
　　　Respondent-Appellant.
_____

　　　Appeal from the Iowa District Court for Butler County, Peter B. Newell, District Associate Judge.

　　　A father appeals the termination of his parental rights under Iowa Code chapter 600A (2020). **AFFIRMED.**

　　　Elizabeth M. Wayne, Parkersburg, for appellant father.

　　　Mark A. Milder, Denver, for appellee mother.

　　　Elizabeth A. Batey of Vickers Law Office, Greene, attorney and guardian ad litem for minor children.

　　　Considered by Bower, C.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

A father appeals the termination of his parental rights to two children, born in 2008 and 2009, pursuant to Iowa Code section 600A.8(3)(b) (2020). He challenges the sufficiency of the evidence supporting the ground for termination and maintains termination is not in the children's best interests.

## I.    Background

The father has been in and out of jail and prison for more than the last two decades. He was convicted of third-degree sexual abuse in 2001. He was sentenced to a suspended prison sentence and placed on probation. He violated his probation in 2003, and his indeterminate prison sentence not to exceed ten years was imposed. The father was released from prison in or about 2006. The parents began their intimate relationship in 2007, when the mother was fifteen or sixteen years old, and the father was in his late twenties. The older child was born about a year later.

The parents' relationship was off and on for the next few years. In or about 2011, the mother and children were living with a friend of the mother's. During that period, the father would visit the children "once in a while," but he "wasn't really a parent towards them," and it seemed he came to see the mother more than the children. In 2011, the mother ended her relationship with the father, upon which the father retrieved a butcher's knife, held it to his throat, and threatened to kill himself, all in front of the children and the mother's friend's children. The father fled before police arrived.

In 2013, the father was ordered to pay child support to the mother in the amount of $20 per month. At the time of trial, the father was not meeting his

obligation on a regular basis, and he was behind on payments by more than $900.[1] Of the support he did pay, it appears most, if not all, was deducted from his paychecks he received from his various employment endeavors and prison wages. Between the parents' breakup and the last time the father saw his children in January 2015, the father rarely visited the children, only seeing them ten times at the most. The mother would occasionally reach out to facilitate contact, but the father's efforts at the same were minimal.

The father was again convicted of sexual abuse in the third degree in 2015. In August of that year, he was sentenced to an indeterminate term of imprisonment not to exceed ten years. Other than the father beginning to send letters after the mother petitioned for termination, the only contact the father had with the children since his imprisonment was occasional birthday cards, some of which were not age appropriate. Also in 2015, the mother began a relationship with another man, who she married in 2018. He serves as a father to the children, the children consider him their father, and he intends to adopt them upon termination. Two other children have been born to the marriage. The mother also has a fifth child who was born prior to her relationship with her husband.

The father remained in prison until September 2019 and was placed in a residential correctional facility. Before the father was released, the mother had advised him she intended to petition for termination and requested the father not contact them after his release. In late 2019 and early 2020, the father violated his

---

[1] It appears this amount would have been more if the father's entire stimulus payment under the federal CARES Act had not gone to the mother to satisfy back child support.

parole numerous times. In relation to one such violation, the father was charged and pled guilty to introducing contraband into a correctional facility and second-offense possession of synthetic marijuana. In April 2020, he was sentenced to indeterminate terms of imprisonment not to exceed five years on count one and two years on count two, to be served consecutively to one another and to the sentence imposed in his parole-revocation case. His tentative discharge date is in September 2022.

The mother petitioned for termination of the father's parental rights in March 2020. Following a trial in October, the court terminated the father's parental rights for abandonment pursuant to Iowa Code section 600A.8(3)(b).[2] The father appeals.

## II. Standard of Review

Appellate review of termination proceedings under chapter 600A is de novo. *In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020). We give weight to the district court's factual findings, especially when considering credibility of witnesses, but we are not bound by them.[3] *In re R.K.B.*, 572 N.W.2d 600, 601 (Iowa Ct. App. 1998). Our primary consideration is the best interests of the children. Iowa Code § 600A.1(1); Iowa R. App. P. 6.904(3)(o); *In re C.A.V.*, 787 N.W.2d 96, 99 (Iowa Ct. App. 2010).

---

[2] While the court did not specifically cite section 600A.8(4), it also concluded termination was appropriate on the basis the father "has been ordered to contribute to the support of the children and has failed to do so without good cause."

[3] We note the court determined the father's various testimony that the mother prevented him from having a relationship with the children and that she threatened him "should be considered with a great deal of skepticism." Upon our de novo review of the record, we agree the father's testimony should not be characterized as credible.

**III.    Analysis**

"Termination proceedings under Iowa Code chapter 600A are a two-step process." *In re Q.G.*, 911 N.W.2d 761, 770 (Iowa 2018); *see* Iowa Code §§ 600A.1, .8. "In the first step, the petitioner seeking termination must first show by clear and convincing evidence a threshold event has occurred that opens the door for potential termination of parental rights." *Id.* "Once that threshold showing has been made, the petitioner must next show, by clear and convincing evidence, termination of parental rights is in the best interest of the child." *Id.*

A.    Threshold Determination

The district court terminated the father's parental rights for abandonment. Section 600A.2(20) defines abandonment of a minor child as "reject[ing] the duties imposed by the parent-child relationship . . . , which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child." Section 600A.8(3)(b), which concerns children who are six months of age or older at the time of the termination hearing, provides the following:

> [A] parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, *and* as demonstrated by any of the following:
> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> (2) Regular communications with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
> (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of

parental rights hearing and during that period openly holding himself
or herself out to be the parent of the child.

(Emphasis added.)

The statute expressly requires the establishment of two elements by clear and convincing evidence: (1) the parent has failed to maintain "substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means," and (2) the parent has failed to maintain sufficient contact with the child under one of the three alternatives listed in section 600A.8(3)(b)(1)–(3). *See* Iowa Code § 600A.8(3)(b); *see also In re S.A.*, No. 17-0859, 2018 WL 1182889, at *2 (Iowa Ct. App. Mar. 7, 2018) (noting "the threshold element of 'substantial and continuous or repeated contact' is economic contributions" (quoting *In re K.W.*, No. 14-2115, 2015 WL 6508910, at *3 (Iowa Ct. App. Oct. 28, 2015))).

Giving deference to and agreeing with the district court's credibility assessments, a de novo review of the record shows the father has failed to maintain substantial and continuous or repeated contact with the children by contributing support in a reasonable amount according to his means. *See* Iowa Code § 600A.8(3)(b). While the father appears to have contributed some support while not imprisoned and when he had employment, he was not even able to keep up on his meager obligation of $20 per month. He has also not maintained substantial and meaningful or repeated contact with the children by visiting them at least monthly when he was able. *See id.* § 600A.8(3)(b)(1). Between the parties' breakup in 2011 and the father's imprisonment in 2015, he saw the children no more than ten times. During this period, the mother took measures to facilitate

contact, but the father took no meaningful steps toward the same. And, after his imprisonment commenced, he took no meaningful steps to regular communications. *See id.* § 600A.8(3)(b)(2). While he maintains he sent letters and cards, the credible evidence shows the father did not begin to send letters until after the mother petitioned to terminate his parental rights or made that intent known. And at least some of the hand-drawn birthday cards he sent were not appropriate, but were instead somewhat disturbing, and we refuse to fault the mother for not giving them to the children. We also disagree with the father that any lack of contact between him and the children was due to the mother's refusal to allow it. The mother only took that stance after years of the father's lack of interest and her decision to pursue termination. Lastly, the father has not openly lived with the children for many years. *See id.* § 600A.8(3)(b)(3).

Upon de our de novo review, we find clear and convincing evidence supports the district court's conclusion the father abandoned the children within the meaning of section 600A.8(3)(b).

B. Best Interests

As noted, a termination petitioner must also show by clear and convincing evidence termination is in the best interests of the children. *Q.G.*, 911 N.W.2d at 770.

> Iowa Code section 600A.1 provides a lengthy description regarding application of the concept of "best interest of the child" in termination proceedings. The provision states the best interest of the child "shall be the paramount consideration" in interpreting the chapter. [Iowa Code] § 600A.1[(2)]. Yet, the section further provides the interests of the parents of the child "shall be given due consideration." *Id.*
> The best interest of the child requires each parent "affirmatively assume the duties encompassed by the role of being a parent." *Id.* Among other things, the court is directed to consider

"the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life." *Id.*

In addition to applying the language of Iowa Code section 600A.1, we have also borrowed from Iowa Code section 232.116(2) and (3) to flesh out the best-interest-of-the-child test. *In re A.H.B.*, 791 N.W.2d 687, 690–91 (Iowa 2010). We consider the child's "physical, mental, and emotional condition and needs" and the "closeness of the parent-child relationship." Iowa Code § 232.116(2)–(3).

*Id.* at 771.

The father has not affirmatively assumed the duties encompassed by the role of being a parent. Those duties—"the fulfillment of financial obligations, demonstration of continued interest in the child[ren], demonstration of a genuine effort to maintain communication with the child[ren], and demonstration of the establishment and maintenance of a place of importance in the child[ren]'s li[ves]"—have been assumed by the mother's husband, who intends to adopt the children. *Id.* Furthermore, the children fear the father and any possibility of him reentering their lives, and the father's relationship with the children cannot be characterized as close. The children's physical, mental, and emotional condition and needs is best served by termination.

## IV.     Conclusion

Clear and convincing evidence shows the father abandoned the children within the meaning of Iowa Code section 600A.8(3)(b) and termination is in the children's best interests. We affirm the termination of the father's parental rights.

**AFFIRMED.**