**IN THE COURT OF APPEALS OF IOWA**

No. 17-0835
Filed November 8, 2017

**IN THE INTEREST OF C.A.,**
**Minor Child,**

**A.P., Mother,**
    Petitioner-Appellee

**B.A., Father,**
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Delaware County, Thomas J. Straka, Associate Juvenile Judge.

A father appeals the termination of his parental rights to his son. **AFFIRMED.**

Cory R. Gonzales of Law Firm of Cory R. Gonzales P.L.L.C., Strawberry Point, for appellant father.

Justin M. Vorwald of Ehrhardt, Gnagy, McCorkindale & Vorwald, Elkader, for appellee mother.

Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**VOGEL, Presiding Judge.**

A father's parental rights to his son, C.A., born 2012, were terminated under Iowa Code section 600A.8(3) (2016) after C.A.'s mother filed a petition for termination of parental rights. The father asserts both a lack of proof he abandoned his son and that termination is not in the child's best interests. On our de novo review, the mother carried her burden of proof on both issues, and we affirm the district court's ruling. *In re R.K.B.*, 572 N.W.2d 600, 601 (Iowa 1998).

## I. Grounds for Termination under Iowa Code section 600A.8(3).

The father claims the mother failed to prove he abandoned C.A. as provided in Iowa Code section 600A.8(3). That section provides in relevant part:

> 3. The parent has abandoned the child. For the purposes of this subsection, a parent is deemed to have abandoned a child as follows:
>
> . . . .
> b. If the child is six months of age or older when the termination hearing is held, a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
> . . . .
> c. The subjective intent of the parent, whether expressed or otherwise, unsupported by evidence of acts specified in paragraph "a" or "b" manifesting such intent, does not preclude a determination that the parent has abandoned the child. In making a determination, the court shall not require a showing of diligent efforts by any person to encourage the parent to perform the acts specified in paragraph "a" or "b."

Iowa Code § 600A.8(3); s*ee also In re G.A.*, 826 N.W.2d 125, 130 (Iowa Ct. App. 2012) (recognizing a parent's subjective intent does not preclude a finding of abandonment).

In July 2012, just prior to C.A.'s birth, the father was arrested on a variety of charges, including two counts of murder in the first degree, and was incarcerated in the county jail. In September 2013, the father entered an *Alford* plea[1] to unauthorized possession of an offensive weapon, third-degree burglary, accessory after the fact, and attempted burglary in the third degree. He was sentenced to sixteen years in prison to run consecutively to a prior sentence of two years, for a total of eighteen years.

Because of his incarceration, the father has only seen C.A. on two occasions; once very briefly at the father's pretrial hearing, and one time in 2014 when the mother brought C.A. to the prison for a two-hour visit. The father, citing *In re M.M.S.*, 502 N.W.2d 4, 8 (Iowa 1993), acknowledges that he cannot use his incarceration as an excuse for not being physically with C.A. or being able to create a relationship with him. However, he maintains he has attempted to remain relevant in C.A.'s life by periodically sending letters and emails, making phone calls, and participating in the prison storybook program. The mother acknowledged some attempts by the father to have contact with C.A. over the years, but she noted the father's efforts had dwindled to next to nothing by the time of the termination hearing. In 2016, C.A. received only a birthday card and a Christmas card according to the mother's testimony. The district court found

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 37 (1970) (holding an express admission of guilt is not a constitutional requisite to the imposition of a criminal penalty).

the father had no emotional connection or any established bond with C.A. and the mother proved the father's attempts to have or maintain any relationship with C.A. were too few and far between to demonstrate he had a "substantial and continual contact" with the child. *See* Iowa Code § 600A.8(3)(b). We agree and affirm this finding.

In addition, the district court found the father provided no financial support for C.A. although he had some ability to do so. The father testified he had employment through the prison system and was "absolutely" able to pay at least some child support. However, he stated he had never been ordered to pay child support and that the mother "could have easily filed and I would have been paying." We agree with the district court that although the father had the ability to pay some child support, he failed to do so or take any initiative to accept his parental obligation in this regard. *See In re W.W.*, 826 N.W.2d 706, 711 (Iowa Ct. App. 2012) (finding mother abandoned her children after she did not support them financially despite no court order obligating her to make child support payments). Because of the lack of communication, feeble attempts at establishing a relationship with C.A., as well as providing no financial support for the child, we agree with the district court the mother proved the father abandoned C.A. as set forth under Iowa code section 600A.8(3).

## II.    Best Interests of the Child.

The father next asserts the district court utilized the standard under chapter 232 when determining termination was in the child's best interests rather

than the best-interest test under chapter 600A.[2]  We do not find this to be the reversible error the father claims.  As our supreme court noted in *In re A.H.B.*, "We have not provided a complete analytical framework to determine the best interest of the child under Iowa Code chapter 600A, but we find the statutory best interest framework described in Iowa Code section 232.116(2), (3) to be useful." 791 N.W.2d 687, 690 (Iowa 2010).  Therefore, we will review the findings made by the district court as to whether termination of the father's parental rights was in C.A.'s best interests.

Substantively, the father asserts there is no one willing and able to take on the role of a father figure to C.A.; hence, he asserts C.A. will become a charge upon the state.  However, the father's assertion rings hollow when he has utterly failed to provide such support for C.A.  Although the district court was somewhat

---

[2] Iowa Code section 232.116(2) provides, in part:
> In considering whether to terminate the rights of a parent under this section, the court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child.  This consideration may include any of the following:
> a. Whether the parent's ability to provide the needs of the child is affected by the parent's mental capacity or mental condition or the parent's imprisonment for a felony.

In comparison Iowa Code section 600A.1 provides:
> This chapter shall be construed liberally.  The best interest of the child subject to the proceedings of this chapter shall be the paramount consideration in interpreting this chapter.  However, the interests of the parents of this child or any natural person standing in the place of the parents to this child shall be given due consideration in this interpretation.
> The best interest of a child requires that each biological parent affirmatively assume the duties encompassed by the role of being a parent.  In determining whether a parent has affirmatively assumed the duties of a parent, the court shall consider, but is not limited to consideration of, the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life.

skeptical of the mother's testimony that she was able to support herself and C.A., the court believed "the financial aspect is only one part of the best interests consideration." It went on to consider additional factors. *See* Iowa Code § 232.116(2) (giving primary consideration to the child's safety, long-term nurturing and growth and to the physical, mental, and emotional condition and needs of the child). In this regard, the court considered the father's history of "disturbing" criminal activity, drug manufacturing and use, as well as emotional and physical abuse of the mother. The court also noted the father's progress while incarcerated and the father's hopes for a better future when he is eventually released from prison. The court concluded:

> The Court simply cannot gamble with the emotional and physical safety of a vulnerable child. As stated previously, there is no established relationship between the child and father. It could be several years before the child is even able to meet the father. If the father returns to his previous ways upon release, both the child and the mother will be in grave danger. The Court has heard the father's claims that he is a changed man. For his sake and the future, the Court certainly hopes that is true. However, the Court is simply unwilling to risk the health and safety of the child to determine if those claims are realized. Accordingly, the Court determines it would be in the best interest of the child to grant the petition to terminate the father's parental rights.

We agree and affirm the district court's determination that termination of the father's parental rights is in the best interests of C.A.

**AFFIRMED.**