**IN THE COURT OF APPEALS OF IOWA**

No. 22-0693
Filed June 15, 2022

**IN THE INTEREST OF A.M.,**
**Minor Child,**

**M.P., Father,**
     Appellant.
_____

Appeal from the Iowa District Court for Story County, Stephen A. Owen, District Associate Judge.

A father appeals the termination of his parental rights to one child. **AFFIRMED.**

Larry J. Pettigrew of Pettigrew Law Firm, P.C., Newton, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Matthew A. Mauk of Mauk Law Office, Ames, attorney and guardian ad litem for minor child.

Considered by May, P.J., and Greer and Chicchelly, JJ.

**CHICCHELLY, Judge.**

A father appeals the termination of his parental rights to one child. He argues the Iowa Department of Human Services (DHS) failed to make reasonable efforts towards reunification. He also challenges the juvenile court's determinations that termination is in the child's best interests and no exception should be applied. Finding these claims without merit, we affirm.

### I. *Background Facts and Proceedings.*

A.M. was removed from her parents' care one day after her birth in September 2021 due to ongoing shortcomings with the DHS in her sibling's case. Since the birth of A.M.'s older sister, T.M., in late 2019, the family was involved with the DHS for domestic violence, mental-health instability, and substance abuse. A.M. was returned to her mother's care in December 2021 but has never been placed with her father. While the father has been incarcerated for all of A.M.'s life thus far, the events leading up to her birth are particularly insightful.

After more than one year of inconsistent participation with services in T.M.'s case, the father engaged in a series of domestic abuse incidents against the mother between March and June 2021. He was convicted of three assault-causing-bodily-injury charges and has a prior conviction for domestic violence involving strangulation. The father was court-ordered to participate in the Iowa Domestic Abuse Program, but he was forced out of the program due to noncompliance and verbal abuse of staff. When he continued to refuse services, the court determined in July that termination would be in T.M.'s best interests.

In August, the father allegedly set fire to the family home, rendering it uninhabitable for T.M. and the mother, who was eight months pregnant with A.M.

While trial was still pending at the time of the termination hearing, the police report indicates that the father admitted to setting the fire, having explained that he wanted to draw attention to ongoing child custody issues and that the DHS had "kidnapped" his daughter. He was charged with arson, criminal mischief, and violation of probation. He was temporarily placed at the Cherokee Mental Health Institute after being found incompetent to stand trial but has been returned to the county jail. Although he has a history of substance abuse, no drug testing has been requested of him since A.M.'s birth due to being incarcerated.

The mother has a protective order in place against the father, although he has violated it multiple times by calling her from jail and the Cherokee Mental Health Institute. He has threatened to kill the mother and maternal grandmother, and he also threatened to kill the DHS case manager with a baseball bat. At a permanency hearing in January 2022, the father claimed he would accept services arranged by anyone other than this case manager but also stated he did not need services. The court waived reasonable effort services after the hearing. The father subsequently submitted a letter regarding case plan recommendations and requesting services. At a permanency hearing in late January, the court denied his request for services and determined reasonable effort services would remain waived. The court terminated the father's parental rights to A.M. in April, and he filed a timely appeal.

## II. Review.

Our review of termination proceedings is de novo. *See In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020). "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for

termination. Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence." *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (internal citation omitted). Though not binding, we give weight to the juvenile court's fact findings. *See* Iowa R. App. P. 6.904(3)(g); *In re C.A.V.*, 787 N.W.2d 96, 99 (Iowa Ct. App. 2010).

### III. Discussion.

The principal concern in termination proceedings is the child's best interests. *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019). Iowa courts use a three-step analysis to review the termination of parental rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). Those steps include whether: (1) grounds for termination have been established, (2) termination is in the children's best interests, and (3) we should exercise any of the permissive exceptions to termination. *Id.* at 472–73. However, we need not consider steps that the parent does not dispute. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

Here, the juvenile court found the State proved by clear and convincing evidence that termination of the father's parental rights was appropriate under paragraphs (b), (e), and (h) of Iowa Code section 232.116(1) (2022). The father does not directly challenge these grounds for termination. Rather, he argues the DHS failed to make reasonable efforts towards reunification, primarily because he was not afforded visitation. *See* Iowa Code § 232.102(7) (requiring that the DHS "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child"). While lack of visitation was raised during the termination hearing, failure to make reasonable efforts was

not argued specifically. Moreover, the father fails to overcome the fact that reasonable effort services were waived by a separate court order in January 2022. Because the father failed to file a motion to reconsider or appeal relative to this order, we find the argument waived.[1] *See In re A.M.H.*, 516 N.W.2d 867, 872 (Iowa 1994) (finding a mother's due process and statutory challenges waived when she failed to file a motion to reconsider, enlarge, or amend in CINA proceedings).

The father also argues termination was not in the child's best interests. For this analysis, we look to the framework described in section 232.116(2). S*ee In re A.H.B.*, 791 N.W.2d 687, 690–91 (Iowa 2010). That provision requires that we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). The "defining elements" of the best-interests analysis are the child's safety and "need for a permanent home." *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (citation omitted). We may glean insight to a child's future "from evidence of the parent's past performance, for that performance may be indicative of the quality of the future care that parent is capable of providing." *B.H.A.*, 938 N.W.2d at 233 (citation omitted). Weighing the factors set forth in section 232.116(2), we agree that termination of the father's parental rights is in the child's best interests. The

---

[1] We also acknowledge that the DHS offered services to the father for over two years, and even if the father had received visitation with A.M., it would not have lessened the State's proof that the child could not be returned to his care at the time of the termination hearing due to his ongoing incarceration. *See, e.g.*, *In re J.S.*, 470 N.W.2d 48, 51 (Iowa Ct. App. 1991) ("It is also clear that at the present time the children cannot be returned to the custody of [the father] because he is incarcerated.").

DHS began offering the parents services to address the safety concerns in the home in late 2019. The father has failed to satisfactorily address his mental health, issues with domestic violence, or substance use. Reports from the DHS have described the father as "volatile and explosive." Returning the child to his care would place her at risk of further adjudicatory harm.

Finally, the father argues an exception to termination would have applied if he had been afforded visitation and thereby established a bond with his child. *See* Iowa Code § 232.116(3)(c) (providing a discretionary exception to termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."). The provisions of section 232.116(3) are "permissive, not mandatory," and the parent bears the burden to prove the applicability of an exception to termination. *A.S.*, 906 N.W.2d at 475–76. Our determination that the child's best interests are served by termination is unchanged by the father's desire for visitation and speculative bond. We do not find a parent-child relationship so strong that it outweighs the need for termination.

Having reviewed the father's reasonable efforts, best interests, and exception arguments, we find each without merit and affirm termination of his parental rights.

**AFFIRMED.**